UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DESMOND QUINLAN INDIVIDUALLY AND ON BEHALF OF HIS MINOR CHILD, MATTHEW QUINLAN; AND NATALIE QUINLAN AND SAMUEL QUINLAN | CIVIL ACTION<br><br>NO. 08-04192 |
| VERSUS | SECTION "C"(2) |
| MCDERMOTT INTERNATIONAL, INC. | |

**ORDER AND REASONS**[1]

This is an action by plaintiff Desmond Quinlan individually ("Quinlan"), on behalf of Matthew Quinlan, Natalie Quinlan, and Samuel Quinlan (collectively "Quinlan's dependents") against defendants McDermott International, Inc. ("MII"), J. Ray McDermott, S.A. ("J. Ray."), and Hydro Marine Services, Inc. ("Hydro") (collectively "McDermott defendants"). This matter comes before the Court on four related motions: (1) McDermott defendants' motion to dismiss for improper venue/forum and alternatively motion for summary judgment, Rec. Doc. 21; (2) McDermott defendants' motion to dismiss or for summary judgment on improper forum/*forum non conveniens*, Rec. Doc. 50; (3) McDermott defendants' motion for summary judgment (Jones Act), Rec. Doc. 51; and (4) defendant MII's motion for summary judgment, Rec. Doc. 49. Having considered the record, the memoranda of counsel and the law, the Court has determined that dismissal is appropriate for the following reasons.

I. Background

---

[1] Ellen Cornutt, J.D. Candidate of The University of Virginia School of Law assisted in preparing this Order and Reasons.

Both J. Ray and Hydro are wholly owned subsidiaries McDermott International, Inc. J. Ray, a Panamanian corporation domiciled in Panama with a principal place of business in Dubai, United Arab Emirates, entered into an Employment Agreement with Quinlan on January 17, 2007. Rec. Doc. 50, Exh. 1-A. Hydro is the owner of the vessel KP1 where the alleged accident occurred.

The plaintiffs filed this action under 46 U.S.C. §30104 (2006) (formerly §688(b)) ("Jones Act") and general maritime law, alleging defendants' negligence in maintaining the vessel KP1 that Quinlan was working on as a diver at the time of his injury.[2] Quinlan was employed by J. Ray as a diver working on board the KP1 and was allegedly injured on July 3, 2007 while working approximately 25 miles off the coast of Qatar. The plaintiffs filed this suit in the Eastern District of Louisiana on August 14, 2008. Rec. Doc. 1. A pre-answer amended complaint was filed on December 2, 2008. Rec. Doc. 7. The defendants collectively filed an answer to the amended complaint on February 6, 2009. Rec. Doc. 13. On September 16, 2009, defendants filed the motion to dismiss for improper venue, alternatively, for summary judgment which is the subject of this Order. Rec. Doc. 21. The defendant McDermott International, Inc. filed a motion for summary judgment on February 15, 2010. Rec. Doc. 49. Also on February 15, 2010, the defendants collectively filed both a motion to dismiss for improper forum under the doctrine of *forum non conveniens* and a motion for summary judgment due to the implications of the Jones Act. Rec. Docs. 50, 51.

With respect to resolving these various motions, the Court need address two basic issues: (1) whether the forum selection clause in the Employment Agreement is valid and enforceable, (2) whether the plaintiffs have a claim under the Jones Act and general maritime law.

---

[2] The plaintiffs also sue for damages under 33 U.S.C. § 905(b), unspecified state and/or foreign tort law and diversity. Rec. Doc. 1.

## II. McDermott defendants' motion to dismiss for improper venue/forum and alternatively motion for summary judgment.

Rule 12(b)(3) allows a defendant to move for the dismissal of an action on the basis of improper venue. *De Joseph v. Odfjell Tankers (USA), Inc.,* 196 F.Supp.2d 476, 479 (S.D. Tex. 2002). The burden of demonstrating that venue is proper falls on the plaintiff. *Id.* A court may allow a plaintiff to carry this burden by setting forth facts that, if taken as true, establish venue. *See Maskey v. Continental Airlines, Inc.,* 133 F.Supp.2d 514, 523 (S.D. Tex. 2001). The defendants seek dismissal of this maritime personal injury case, alleging that a valid and enforceable forum selection clause requires all disputes arising out of Quinlan's employment to be heard in either the country of territorial jurisdiction over the accident, Qatar, or the employee's country of citizenship or permanent resident, Northern Ireland.[3]

In cases where a forum selection clause exists, the court must employ the approach outlined by the Supreme Court in *M/S Bremen v. Zapata Off-Shore,* 407 U.S. 1, 11 (1972) and *Carnival Cruise Lines*, 499 U.S. 585 (1991). Forum selection clauses are presumptively valid absent a strong showing that such a clause should be invalidated and the burden is on the party seeking to overturn the clause to show that enforcement would be unreasonable under the circumstances. 407 U.S. at 11. The party seeking to negate the clause must prove: (1) the clause was a product of fraud or overreaching; or (2) the party attempting to escape enforcement of the clause will in essence be deprived of their day in court; or (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) the public policy of the forum conflicts

---

[3] The reads in relevant part as follows:
> If Employee is not a citizen or resident alien of the United States, any such dispute or claim against Employer shall be litigated, if at all, in and before a court, tribunal or other judicial and administrative body in the country having territorial jurisdiction over the geographic area (including the adjacent continental shelf or navigable waters) where the injury occurred or the illness arose or the country where the Employee permanently resided at the time such injury occurred or the illness arose.

Rec. Doc. 21, Exh. 2A, p. 3.

3

with the enforcement of the forum selection clause. *Id.* at 595; *Calix-Chacon v. Global Int'l Marine*, 493 F.3d 507, 511 (5th Cir. 2007) (citing *Haynesworth v. Corporation*, 121 F.3d 956, 963 (5th Cir. 1997)).

The plaintiffs allege that the forum selection clause in the Employment Agreement is a product of overreaching, because it was not subject to a fair bargaining process and because Quinlan did not a have meaningful choice in signing the agreement. Rec. Doc. 27 at 26. The plaintiffs propose that if he had not signed the agreement Quinlan would have been left in the Middle East without a way to return home. This is speculative at best. Furthermore, even assuming he initially signed because he felt he had no choice, Quinlan could have chosen to resign once he returned home, or sought to modify the contract, but he did not. Quinlan did in fact return home several times after he signed the agreement. As for his lack of bargaining power, *Carnival Cruise Lines* makes clear that a clause in a form contract is only subject to scrutiny to ascertain that it is not fundamentally unfair regardless of whether bargaining did or did not occur. 499 U.S. at 595. Like the standard ticket in *Carnival Cruise Lines* which bound passengers, the Employment Agreement signed by Quinlan is similar to contracts routinely signed by offshore foreign oil workers. *See, e.g.*, *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216 (5th Cir. 1998); *Calix-Chacon v. Global International Marine, Inc.*, 493 F.3d 507 (5th Cir. 2007). Oceangoing vessels may traverse many jurisdictions and forum selection clauses legitimately stabilize where litigation is to be brought in the event of an accident. *Id.*

The plaintiffs also argue that the forum selection clause is unenforceable due to the public policy implications of the Jones Act, relying on *Boyd v. Grand Trunk Western Railroad Co.*, 338 U.S. 263 (1949) and the uncontroversial statement that the goal of the Jones Act is to provide injured seamen with a right of action against their employers similar to the way that the

Federal Employer's Liability Act (FELA) provided a right of action for railroad workers. Rec. Doc. 27 at 46. Instead of using the *Boyd* analysis, however, the Fifth Circuit has repeatedly stated that forum selection clauses in seamen's contracts are properly analyzed under the *Bremen* presumption of validity. *See, e.g., Calix-Chacon v. Global International Marine, Inc.*, 493 F.3d 507 (5th Cir. 2007); *Marinechance Shipping*, 143 F.3d at 220; *Ambraco v. M/V Clipper Faith*, No. 06-9966, 2007 U.S. Dist. WL 1550960, at *2 (E.D.La. May 25, 2007); *Nunez v. Weeks Marine, Inc.*, 2007 WL 496855, at *2 (E.D. La., April 27, 2006) (upholding an arbitration clause, a subset of forum selection clauses).

Finally, the forum selection clause can hardly be said to be unreasonable as it allows suit to be brought in the plaintiff's own home country, as well as Qatar as an alternative.[4] The Court therefore finds the forum selection clause enforceable.[5]

### III. McDermott defendants' motion for summary judgment (Jones Act)

Related to the motion to dismiss for improper venue and the enforceability of the forum selection clause, the defendants argue that the Jones Act and general maritime claims should be dismissed because the plaintiffs are precluded from suing in the United States due to the requirements of 46 U.S.C. §30105.[6]

---

[4] This distinguishes this case from *Cabreras v. Efharis Shipping & Trading Co.*, 1997 WL 698020, at *2 (E.D.La., Nov. 7, 1997). In *Cabreras,* the plaintiff was Nicaraguan and the only forum designated was Greece. *Id.*

[5] The Court finds Plaintiff's other argument, i.e. that the forum selection clause is invalid because it is binding only between Quinlan and J. Ray, that it is not mandatory, that it is ambiguous, that it does not cover all the claims, and that it is untimely, to not be persuasive.

[6] **46 U.S.C. §30105. Restriction on recovery by non-citizens and non-resident aliens for incidents in waters of other countries.**
**(a) Definition.**—In this section the term "continental shelf" has the meaning given that the term in article I of the 1958 Convention of the Continental Shelf.
**(b) Restriction**.—Except as provided in subsection **(c),** a civil action for maintenance and cure or for damages for personal injury or death may not be brought under a maritime law of the United States if—**(1)** the individual suffering the injury or death was not a citizen or permanent resident alien of the United States at the time of the incident giving rise to the action; **(2)** the incident occurred in the territorial waters or waters overlaying the continental shelf of a country other than the United States; **(3)** the individual suffering the injury or death was employed at the time of the incident by a person engaged in the exploration, development, or production of offshore mineral or energy resources, including drilling, mapping, surveying, diving, pipe-laying, maintaining, repairing, constructing, or transporting supplies, equipment, or personnel, but not including transporting those resources by a vessel constructed or adapted primarily to carry oil in bulk in the cargo spaces.

5

Section 30105 (b) provides that a seaman cannot bring an action for maintenance and cure or for damages to personal injury or death under the maritime law of the United States if (1) the individual was a foreign citizen at the time of the injury, (2) the incident occurred in territorial waters or waters overlaying the continental shelf of a foreign country, and (3) the individual was employed at the time of the injury in the exploration, development, or production of offshore energy resources. The plaintiffs stipulate as to the first and third requirements. The parties disagree whether or not "the incident occurred in the territorial waters *or* waters overlaying the continental shelf of a country other than the United States…" 46 U.S.C. §30105 (b)(2) (emphasis added).

In support of the argument that the incident did not occur in the applicable waters, the plaintiffs cite Articles 3 and 78 of the United Nations Convention on the Law of the Sea ("UNCLOS"), which state that a country's territorial waters only extends 12 nautical miles (approximately 14 miles) from the coastline, and thus Qatari courts do not have jurisdiction because the injury occurred approximately 25 miles offshore. Rec. Doc. 27; Exh. A. The plaintiffs provide no authority for the proposition that the UNCLOS definition of territorial waters is persuasive in interpreting 46 U.S.C. §30105(b)(2). The Court finds that the relevant fact is not the UNCLOS definition of "territorial waters" but the fact that the accident occurred in the waters above the continental shelf of a country other than the United States. Article 76 of UNCLOS defines the continental shelf as "compris[ing] the seabed and subsoil of the submarine areas that extend beyond its territorial sea throughout the natural prolongation of its land territory to the outer edge of the continental margin, or to a distance of 200 nautical miles from

---

**(c) Nonapplication**.—Subsection **(b)** does not apply if the individual bring the action establishes that a remedy is not available under the laws of—**(1)** the laws of the country asserting jurisdiction over the area in which the incident occurred; or **(2)** the country in which the individual suffering the injury or death maintained citizenship or residency at the time of the incident.

6

the baselines from which the breadth of the territorial sea is measured where the outer edge of the continental margin does not extend up to that distance." Here, the parties agree that the alleged injury occurred approximately 25 miles off the coast of Qatar in the waters of the Persian Gulf, well within the waters overlaying the continental shelf as defined by UNCLOS. Thus, the present accident satisfies the second factor of Section 30105 and Quinlan is precluded from suing under the Jones Act or maritime law of the United States.

In addition, legislative history surrounding the Jones Act undermines the plaintiffs' arguments. The legislative history surrounding the amendment of 46 U.S.C. §688(b) reveals that the Jones Act was amended in order to prevent foreign oil workers from suing for personal injury in the United States courts. *See, e.g.,* H.R. Rep. No. 863, 97th Cong., 2d Sess., at 2 (1982). The House Committee noted:

> The legislation addresses the situation where a foreign worker, injured in the territorial waters or over the continental shelf of a nation over than the United States, seeks relief in the courts of the U.S. The legislation provides that suit may not be maintained in that situation under U.S. law unless the injured party has no remedy in either his country of citizenship or nationality or the country exercising jurisdiction over the waters where the incident giving rise to the injury occurred.

*Id.* That prohibited situation is presented here.

The text of Section 30105 (c) allows a limited exception to allow a foreign seaman access to United States maritime law if the plaintiff can establish that he has no remedy in either (1) the country asserting territorial jurisdiction over the site of the injury, (2) the country of the plaintiff's citizenship, or (3) legal residence. *See, e.g., Camejo v. Ocean Drilling & Exploration Co.,* 838 F.2d 1374, 1376 (5th Cir. 1988); *Jackson v. Northbank Towing*, 213 F.3d 885 (5th Cir. 2000). The foreign seaman must provide more than conclusory affidavits stating that foreign remedies are unavailable. *Brown v. Atwood Oceanics, Inc.,* 676 F.Supp. 720 (M.D. La. 1988).

The plaintiffs further argue they do not have a remedy available in the enumerated fora, but for the purposes of Section 30105(c) they have failed to satisfy their burden of proving that neither the courts of Qatar or Northern Ireland are open to them. The affidavits submitted by the parties differ as to whether or not the fora designated in the Employment Agreement would exercise jurisdiction. It is undisputed that the plaintiffs have already availed themselves of the some of the remedies provided by Northern Ireland. Defendants present evidence that the plaintiff has already received over $307,000 in medical and compensation benefits, including over $150,000 from the United Kingdom's National Health Service. Rec. Doc. 32-3 at 11.

The plaintiffs further assert that this action could not be dismissed because neither Qatar nor Northern Ireland would hear the claims of Quinlan's dependents. The claims of Quinlan's dependents are necessarily reliant on the finding of a bona fide Jones Act, general maritime claim, or claim under Section 905(b), for Quinlan. The clear language of 30105 prevents any "civil action for damages for personal injury…under a maritime law of the United States;" its scope is not limited to the "individual suffering the injury." This provision serves to undermine his relatives' claim under the general maritime law based on Quinlan's injuries.

**IV. McDermott defendants' motion to dismiss or for summary judgment on improper forum/*forum non conveniens*.**

The defendants also claim the case should be dismissed under the doctrine of *forum non conveniens*. The United States Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 504 (1947) spoke of the "exceptional circumstances" where the doctrine of *forum non conveniens* is appropriate. Because this court finds that the forum selection clause enforceable and the

plaintiffs have no claim under the Jones Act and general maritime law, it need go no further here. Therefore, this Court finds that the defendants' motion is moot.[7]

## V. Defendant MII's motion for summary judgment

Finally, MII moves for summary judgment. It argues that summary judgment is appropriate because MII is a distinct company and was neither Quinlan's employer nor the owner of the vessel KP1 where the accident occurred. Plaintiffs argue that McDermott International, Inc. is liable to the plaintiffs because the company is not distinct from its subsidiaries J. Ray and Hydro; instead MII's subsidiaries are merely "alter egos" for the parent company. Because the case has been dismissed due to the enforceability of the forum selection clause and the inapplicability of the Jones Act and general maritime law to the plaintiffs' claims, we find it unnecessary to reach this issue.

Accordingly,

IT IS ORDERED that McDermott defendants' motion to dismiss for improper venue/forum and alternatively motion for summary judgment is GRANTED. Rec. Doc. 21.

IT IS FURTHER ORDERED that the McDermott defendants' motion to dismiss or for summary judgment on improper forum/*forum non conveniens* is DISMISSED AS MOOT. Rec. Doc. 50. In light of the defendant's agreement to proceed in an appropriate foreign forum, if the dependents intend to pursue foreign claims in a foreign forum, the Court will entertain a joint motion for a jointly-prepared order of conditional dismissal within 5 days of this order.

IT IS FURTHER ORDERED that defendants' motion for summary judgment (Jones Act) is GRANTED and the plaintiffs' claims are DISMISSED WITH PREJUDICE. Rec. Doc. 51.

---

[7] The Court notes that the defendants have agreed to consent to jurisdiction in an alternative forum and waive any statute of limitations defense as a condition of dismissal. *Baris v. Sulpicio Lines, Ltd.*, 932 F.2d 1540, 1551 (5th Cir. 1991). To the extent that Quinlan's dependents intend to pursue other claims based on foreign law in a foreign jurisdiction, the Court will entertain any motion for an order to this effect presented by the parties within five days, if appropriate.

IT IS FURTHER ORDERED that defendant MII's motion for summary judgment is DISMISSED AS MOOT. Rec. Doc. 49.

New Orleans, Louisiana, this 15th  day July, 2010.

                                                            Helen G. Berrigan
                                                            United States District Judge